UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| DEREK VICE,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>BOB DOOLEY, Warden, and<br>MARTY JACKLEY, Attorney General of<br>the State of South Dakota,<br><br>　　　　　Defendants. | CIV. 14-5076-JLV<br><br><br>ORDER |

On October 23, 2014, petitioner Derek Vice, an inmate at the South Dakota State Penitentiary in Sioux Falls, South Dakota, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket 1). On December 5, 2014, the defendants moved to dismiss the petition. (Docket 11). Mr. Vice opposed the motion. (Docket 16). Pursuant to a standing order of October 14, 2014, the matter was referred to United States Magistrate Judge Veronica L. Duffy pursuant to 28 U.S.C. § 636(b)(1)(B). On June 3, 2015, Judge Duffy issued a report recommending the court grant the defendants' motion to dismiss. (Docket 27). Pursuant to 28 U.S.C. § 636(b)(1), objections to the report and recommendation were due on or before June 24, 2015. On June 17, 2015, Mr. Vice filed a request for a hearing on the petition. (Docket 28). On September 1, 2015, the court learned the report and recommendation had not been mailed to Mr. Vice. (Docket 31). A new deadline of September 21, 2015, was set for filing objections. Id. Mr. Vice timely filed his objections. (Docket 33). As part of

his submission, Mr. Vice asked for leave of the court to file an affidavit from Stewart Martin, an individual Mr. Vice believes is critical to his objections. (Docket 33-1 at p. 1). As of the date of this order Mr. Martin's affidavit has not been filed.

The court reviews *de novo* those portions of the report and recommendation which are the subject of objections. Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990); 28 U.S.C. § 636(b)(1). The court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Mr. Vice's objections are overruled and the report and recommendation is adopted in full.

## PETITIONER'S OBJECTIONS

Following a jury trial in August 2012 in the Seventh Judicial Circuit Court for the State of South Dakota, Mr. Vice was convicted of count 1: distribution of a controlled substance, methamphetamine; and count 2: possession of a controlled substance, methamphetamine. (Docket 12-1 at pp. 1-2). Following the verdict, Mr. Vice admitted to being a habitual offender under South Dakota law. Id. at pp. 2-3. The state court judge sentenced Mr. Vice to twenty-five years imprisonment on each count, with the sentences to be served concurrently. Id. at pp. 3-5.

Before addressing Mr. Vice's objections, the court adopts the procedural history outlined in the report and recommendation. (Docket 27 at pp. 2-7). Without reciting that procedural history, it is important to note that the only

issues presented in Mr. Vice's petition for relief were: (1) "his constitutional right to a fair trial was violated because [Detective] Andy Becker presented false testimony to the grand jury"; and (2) "Det. Becker's grand jury testimony is newly [discovered] evidence." Id. at p. 7 (referencing Docket 1 at pp. 4-5). The magistrate judge found these claims were "clearly exhausted at the state level." Id. at p. 13. The report recommends dismissal of Mr. Vice's petition "for procedural default." Id. at p. 22.

Mr. Vice filed seven objections to the report and recommendation of the magistrate judge. (Docket 33). His objections are summarized and reorganized for analysis purposes as follows:

1. The magistrate judge erred in concluding Mr. Vice failed to show cause for his procedural default in the state court action;

2. Mr. Vice has shown cause which the South Dakota Supreme Court should have considered;

3. A detective lied to the grand jury;

4. The state prevented Mr. Vice from presenting witnesses at the state court jury trial;

5. Mr. Vice's fingerprints were not on the drug container given to the undercover informant;

6. A confidential informant lied when he identified Mr. Vice as the driver of a truck; and

7. Mr. Vice claims to be actually innocent of the state court offenses.

Id.

The magistrate judge properly identified and analyzed Mr. Vice's petition under the law of procedural default.  (Docket 27 at pp. 14-17).   Following that analysis, the magistrate judge concluded "[b]ecause the last reasoned state court opinion dealing with Mr. Vice's habeas claims did not address their merits but rejected them on procedural grounds, this Court is precluded from reviewing them."  Id. at p. 17 (referencing Coleman v. Thompson, 501 U.S. 722, 750 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.") and Wiegers v. Weber, 37 Fed. Appx. 218, 219-20 (8th Cir. 2002) (unpublished) (prisoner's failure to timely appeal denial of state habeas resulted in denying South Dakota an "opportunity to decide the . . . claim on the merits because Wiegers failed to present the claim to the state court in a timely or procedurally correct manner.").

The court will address Mr. Vice's objections in a manner deemed most efficient and appropriate based on the federal petition.

1.   THE MAGISTRATE JUDGE ERRED IN CONCLUDING MR. VICE FAILED TO SHOW CAUSE FOR HIS PROCEDURAL DEFAULT IN THE STATE COURT ACTION

Mr. Vice alleges the reason he defaulted in state court was because the prison legal aide, Mr. Bidne, failed to provide proper advice.  (Docket 33)

4

(referencing Docket 33-2 at p. 1).  Addressing the denial of a certificate of probable cause by the South Dakota Supreme Court, Mr. Bidne states "[i]t is my understanding that your [certificate of probable cause] was denied due to the fact that you did not send copies of it to the Attorney General [or] the appropriate State's Attorney.  I apologize that there was a miscommunication between this office and yourself.  Somehow it was overlooked that you did not have enough copies to send to all of the necessary parties and thus your [certificate of probable cause] was denied.  Please understand that it was not intentional, but there was definitely a miscommunication."  (Docket 33-2 at p. 1).  Mr. Vice uses this miscommunication claiming an "objective factor external to [petitioner] impeded [his] efforts" to present his issues to the state court.  (Docket 33) (referencing Docket 27 at p. 18 ("The habeas petitioner must show that "some objective factor external to [petitioner] impeded [his] efforts.") (quoting Cornman v. Armontrout, 959 F.2d 727, 729 (8th Cir. 1992) (internal citation omitted)).

Mr. Bidne's miscommunication is not relevant to the court's analysis.  The South Dakota Supreme Court specifically addressed the notice issue in the order denying Mr. Vice's motion for a certificate of probable cause.

> [T]he Court by order of August 20, 2014, entered an order to show cause on the grounds that service of the motion for certificate of probable cause, was not made upon both the attorney general and the appropriate state's attorney when the motion was submitted . . . and [Mr. Vice] having served and filed a showing and [Warden Dooley] having served and filed a response thereto and the court having considered the motion, showin[g] and response . . . ORDERED that the

>motion for certificate of probable cause be and it is hereby denied.

Docket 12-17).

The South Dakota Supreme Court did not deny Mr. Vice's motion for a certificate of probable cause solely because of the notice issue.  It is evident the court concluded that no "appealable issue exists."  SDCL § 21-27-18.1.

Mr. Vice failed to show "cause" for the procedural default in the state court habeas proceedings.  This ruling also resolves objection number two for the same reasons.  Objections number one and two are overruled.

3.  A DETECTIVE LIED TO THE GRAND JURY

Mr. Vice alleges "his constitutional right to a fair trial was violated because [Detective] Andy Becker presented false testimony to the grand jury." (Docket 1 at p. 5).  He alleges this testimony was "newly discovered evidence."  Id. at p. 4.

Mr. Vice's fourth state habeas petition addressed this claim.  See Docket 27 at p. 5.  South Dakota law governs Mr. Vice's ability to raise this claim in his fourth application for habeas corpus relief.  "Before a second or subsequent application for a writ of habeas corpus may be filed, the applicant shall move in the circuit court of appropriate jurisdiction for an order authorizing the applicant to file the application.  The assigned judge shall enter an order denying leave to file a second or successive application for a writ of habeas corpus unless: . . . [t]he applicant identifies newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and

6

convincing evidence that no reasonable fact finder would have found the applicant guilty of the underlying offense . . . ." SDCL § 21-27-5.1(1).

The magistrate judge determined Mr. Vice met "the first part of this burden by alleging that he did not know about Det. Becker's grand jury testimony until approximately June 2014, making it 'new' evidence to him." (Docket 27 at p. 19). After discussing Detective Becker's grand jury testimony and contradictory trial testimony, the magistrate judge concluded "that difference did not establish Mr. Vice's innocence by clear and convincing evidence because Sgt. Hughes was able to positively identify Mr. Vice as a participant in the controlled buy at trial." Id. at pp. 20-21. While Mr. Vice may have been able to attack Detective Becker's trial testimony with his inconsistent grand jury testimony, that impeachment would not have risen to the level of clear and convincing evidence of innocence because another member of the drug task force testified Mr. Vice was a participant in the controlled buy.

Objection number three is overruled.

4. THE STATE PREVENTED MR. VICE FROM PRESENTING WITNESSES AT THE STATE COURT JURY TRIAL

Mr. Vice objects to the report and recommendation because "the state prevented me from presenting my defense thru threats to my witnesses and even if you choose to agree with the South Dakota Supreme Court ruling about Davis and Purcell being present at court and that enough is to satisfy my right to compulsory process." (Docket 33). This issue was addressed in Mr. Vice's first

state court habeas petition.  He alleged his constitutional rights were violated because the prosecutor threatened two of his alibi witnesses, Gene Davis and Jamie Purcell.  (Docket 27 at p. 3) (referencing Docket 12-5 at p. 2).

This claim was the subject matter of Mr. Vice's first federal habeas petition.  Id.; see also Vice v. Dooley, CIV. 13-5054-JLV, Docket 1 at p. 5.  The first petition was dismissed in December 2013 as Mr. Vice had not exhausted this claim in state court.  (Docket 27 at p. 4).  The South Dakota Supreme Court denied Mr. Vice's motion for a certificate of probable cause on this issue on October 3, 2014.  (Docket 12-7).

This issue was not raised in Mr. Vice's second federal petition.  (Docket 1).  Therefore, it constitutes an improper objection to the magistrate judge's report.  Courts routinely hold that "while the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate." Murr v. United States, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (collecting cases in which courts deemed waived issues raised for the first time in objections to a magistrate judge's report and recommendation).

As Mr. Vice's claim is not properly before the court, the court declines to address it.  See, e.g., Eldridge v. Hart, No. 5:07-CV-464(WLS), 2010 WL 5439780 at *3 (M.D. Ga. Dec. 28, 2010) (denying without consideration claims for habeas relief raised for the first time in petitioner's objections to the

magistrate judge's report and recommendation); Gonzalez v. Garvin, No. 99 Civ. 11062(SAS), 2002 WL 655164 at **1-2 (S.D. N.Y. April 22, 2002) (noting a district court cannot consider a claim for habeas relief raised for the first time in petitioner's objections to a magistrate judge's report and recommendation because to do so would undermine the authority of the magistrate judge).

Objection number four is overruled.

5.  MR. VICE'S FINGERPRINTS WERE NOT ON THE DRUG CONTAINER GIVEN TO THE UNDERCOVER INFORMANT

Mr. Vice claims his fingerprints were not on the drug container which the confidential informant allegedly acquired from him. (Docket 33). This issue was not raised in Mr. Vice's second federal petition. (Docket 1). This is an improper objection to the report. Murr, supra; Eldridge, supra; and Gonzalez, supra. Objection number five is overruled.

6.  A CONFIDENTIAL INFORMANT LIED WHEN HE IDENTIFIED MR. VICE AS THE DRIVER OF A TRUCK

Mr. Vice claims the confidential informant lied as Mr. Vice claims he was not even in the truck at the time of the controlled buy. (Docket 33). This issue was not raised in Mr. Vice's second federal petition. (Docket 1). This is an improper objection to the report. Murr, supra; Eldridge, supra; and Gonzalez, supra. Objection number six is overruled.

9

7.     MR. VICE CLAIMS TO BE ACTUALLY INNOCENT OF THE STATE COURT OFFENSES

"[A] petitioner can obtain review of procedurally defaulted claims if he produces reliable new evidence not available at trial which demonstrates that it is more likely than not, that with this evidence no reasonable juror would have convicted him." Amrine v. Bowersox, 128 F.3d 1222, 1226-27 (8th Cir. 1997) (referencing Schlup v. Delo, 513 U.S. 298, 326-38 (1992). "If a petitioner presents sufficient evidence of actual innocence, he should be allowed through this gateway permitting him to argue the merits of his underlying constitutional claims." Id. at 1227. "In deciding whether a petitioner has made the necessary showing of innocence, a federal court must make its own determination of whether the 'probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial' is sufficient to warrant consideration of the otherwise barred claims." Id. (quoting Schlup, 513 U.S. at 330-32). "The underlying reason for an actual innocence gateway is that the 'quintessential miscarriage of justice is the execution of a person who is entirely innocent.'" Id. (quoting Schlup, 513 U.S. at 324-26).

"A petitioner can meet the standard even if 'the trial record contained sufficient evidence to support the jury's verdict' because the district court must consider 'the probative force' of the new evidence together with what was produced at trial." Id. at 1228 (quoting Schlup, 513 U.S. at 330-32). "If new evidence calls into question the credibility of the witnesses at trial, the habeas

10

court may itself have to make credibility assessments . . . ." Id. "On a gateway claim of actual innocence, a federal court must consider all the evidence to make its own determination whether there is a sufficient showing to justify consideration of a petitioner's otherwise barred claims, and this calculus may involve making credibility determinations of key witnesses." Id. "[A]n evidentiary hearing is not required on a claim of actual innocence if development of the claim would not establish actual innocence." Bannister v. Delo, 100 F.3d 610, 617 (8th Cir. 1996).

Collateral to the other objections, Mr. Vice claims he is actually innocent of the state offenses. (Docket 33). Mr. Vice claims that he was with Stewart Martin at the time of the alleged offenses. Id. Mr. Vice represented to the court that Mr. Martin would execute an affidavit consistent with this assertion. (Docket 33-1). Mr. Martin's affidavit has not been filed. For purposes of this analysis, the court will give Mr. Vice the benefit of the doubt and accept his representation of what would be contained in Mr. Martin's statement.

Mr. Martin has been a major focus of Mr. Vice's state habeas petitions. In the first state petition, Mr. Vice alleged his attorney provided ineffective assistance of counsel for "fail[ing] to locate [Mr.] Martin, a key alibi witness." (Docket 27 at p. 3) (referencing Docket 12-5). Mr. Martin was also the sole subject of Mr. Vice's second state habeas petition. Id. (referencing Docket 12-8). Mr. Vice asserted that his "lawyer never found my key [alibi] witness Stewart Martin. He is able to verify that I was with him at the time of the crime and my

11

lawyer . . . told me he could not find him before my trial.  My new [lawyer] . . . found him and he confirmed my statements." (Docket 12-8 at p. 2).  Mr. Vice's second lawyer never filed an affidavit supporting Mr. Vice's assertions to the court and Mr. Martin's sworn statement was never made a part of the state habeas proceeding.

In the state criminal case, Kevin Lewis, Mr. Vice's attorney, filed a notice of alibi defense on June 2, 2012.  State v. Vice, Seventh Judicial Circuit Court for the State of South Dakota, Crim. No. 12-1398, at p. 18.  In the notice, Mr. Lewis represented to the court and prosecution that Mr. Vice "was with Mr. Stewart Martin on March 25, 2011, in the Black Hills, at various locations, picking up junk vehicles and scrap metal.  Mr. Martin will testify that they worked all day and were done sometime in the late afternoon, early evening."  Id.  On June 18, 2012, the state criminal trial judge entered an order requiring Mr. Vice's attorney to provide the prosecutor with an accurate spelling of the proposed alibi witness' name, an address and the "the specific locations and times the alibi witness will testify to . . . ."  Id. at p. 64.  On June 26, 2012, just three weeks later and a few weeks before the start of the jury trial, Mr. Lewis wrote to Mr. Vice and stated "[a]s cooperative as Stewart Martin is being, I sure hate to rely on him."  Vice v. Dooley, state court file 12-1398, letter of Attorney Kevin Lewis to Mr. Vice.  On July 23, 2012, the trial judge entered an order precluding Mr. Vice from presenting an alibi defense.  State v. Vice, 12-1398 at p. 145.

12

Among the evidence the jury heard was a number of telephone calls between the confidential informant ("CI") and Mr. Vice. The cell phone number called by the CI belonged to Mr. Vice's mother. Exhibits 14-16. During the first call there was no answer, but the message stated "[h]ello you've reached Derek, please leave your name and number and I will return your call." (Exhibit 3, an audio tape was admitted at trial, and Exhibit 3a, a transcript of the audio tape was used by the jury only during the playing of the audio tape. The same procedure was used for the other telephone calls). The second call between the CI and Mr. Vice on March 25, 2011, the date of the alleged offenses, was the set-up call. (Exhibits 4 & 4a). The telephone call starts with the receiver identifying himself as "Derek Vice." (Exhibit 4a at line 7). When the CI asked who it was, the individual states "Derek." Id. at line 13. During the conversation the receiver indicates he was "in Hot Springs right now, I'll call, probably have to wait until Gene gets off." Id. at lines 26-27. When asked when that would be, the receiver indicates "Oh five . . . six, yea." When the CI asked if they could meet around 3 p.m., the individual says he would need to "see if he'll [Gene will] leave one there at lunch time" and then would call the CI back. Id. at lines 37-44.

In what is designated as "phone call 3," the receiver again identifies himself as "Derek Vice" (Exhibit 5a at line 9). He states that "he's [Gene's] gonna do it. He's gonna leave it there for me. I'm in Hot Springs. I've got two cars left to load up." Id. at lines 17-19. The receiver states "[g]onna be real quick and then

13

I will be back; hour drive probably another hour up here loadin' cars.   So I'll be back in a couple hours.   I'll call ya." Id. at lines 23-25.

The jury also heard an audio tape of the controlled buy with the CI. (Exhibit 9).   The transcript of the audio tape, in pertinent part, includes a telephone call between the CI and an individual, while the CI was driving to Mr. Vice's residence:

CI:   Hey were ya at?

DV:   Inaudible

CI:   Well hurry up.   I'm on your porch. . . .
. . .
CI:   You better get a race car . . . You better get a race car.

DV:   Waiting on you dude

CI:   I gotta hurry, I got to pick up the wife bud she had to get, ah, test done.

DV:   You look like you're 15 bro.
. . .
DV:   You've got more stories . . . get my money out.

CI:   Get my shit out . . . I got . . . fifty, fifty, a hundred, twenty, forty, fifty, sixty, seventy, eighty, ninety.   One ninety.   Total.   Thank you much I got to roll bro, I'm late.
. . .
DV:   Have a good day.
. . .
DV:   You want to see somethin'?

CI:   I gotta roll bud. I got to roll.   I'm serious.   Give me all that money.   Bitch.

DV:   That's one day worth of work.

14

      CI:   Yeah.

      DV:   All hundreds bro.

      CI:   I got to roll bud, alright, later.

(Exhibit 9a at pp. 2-3). It was for the jury to determine whether the voice of Derek Vice on the voice message and set-up call was the same voice they heard during the controlled buy.

Law enforcement's controlled purchase log indicates the buy occurred between 3:22 p.m. and 3:25 p.m. on March 25, 2011. (Exhibit 8). At trial, Sgt. Hughes who "was conducting surveillance for the controlled buy," testified "he personally saw Mr. Vice arrive in his pick-up, exit the pick-up, and enter the residence where the controlled buy occurred." (Docket 27 at p. 20) (referencing trial transcript at pp. 161-63).

The court gives Mr. Vice the benefit of the doubt as to whether Mr. Martin would have testified consistent with Mr. Vice's representation such that a proper notice of alibi would have been filed before trial. Assuming Mr. Martin would have testified at trial does not overcome the audio recordings of Mr. Vice with the CI in preparation for the controlled buy, their discussion during the drug transfer and the eyewitness testimony of Sgt. Hughes. The court finds Mr. Martin's anticipated testimony would not have overcome the credible prosecution evidence presented at trial.

Similarly, the court gives Mr. Vice the benefit of the doubt that his fingerprints do not appear on the methamphetamine container acquired by the

15

CI and that this information should have been disclosed to the jury. There are many reasons fingerprints are not transferred to objects allegedly handled by someone in any transaction, criminal or otherwise. Had the absence of Mr. Vice's fingerprints on the container been disclosed to the jury, that information would not have overcome the credible prosecution evidence presented at trial.

The court finds Mr. Vice cannot show that a reasonable jury more likely than not would not have convicted him at trial. Amrine, 128 F.3d at 1230 ("The appropriate inquiry is whether it is more likely than not that in light of the new evidence no reasonable juror, conscientiously following the judge's instruction requiring proof beyond a reasonable doubt, would vote to convict.") (internal quotation marks and citation omitted). See also Barrington v. Norris, 49 F.3d 440, 441 (8th Cir. 1995) ("To invoke the actual-innocence exception to the procedural default rule, the habeas petitioner must show that it is more likely than not that no reasonable juror would have convicted [him].") (internal quotation marks omitted, citing Schlup, 513 U.S. at 330). Mr. Vice is not entitled to an evidentiary hearing on this claim. Bannister, 100 F.3d at 617.

Objection number seven is overruled.

## ORDER

The court finds the report and recommendation is an accurate and thorough recitation of the facts and applicable case law. The court further finds Judge Duffy's legal analysis is well-reasoned. Having carefully reviewed the record in this case and good cause appearing, it is

ORDERED that Mr. Vice's objections (Docket 33) to the report and recommendation are overruled.

IT IS FURTHER ORDERED that the report and recommendation (Docket 27) is adopted in full.

IT IS FURTHER ORDERED that the defendants' motion to dismiss (Docket 11) is granted.

IT IS FURTHER ORDERED that Mr. Vice's request for an evidentiary hearing (Docket 28) is denied.

IT IS FURTHER ORDERED that Mr. Vice's renewed motion for appointment of counsel (Docket 29) is denied.

IT IS FURTHER ORDERED that Mr. Vice's petition (Docket 1) is dismissed with prejudice.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 2253(c) and Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, the court declines to issue a certificate of appealability.  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (emphasis added) (establishing a two-prong standard).  "Where

a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the case or that the petitioner should be allowed to proceed further.  In such circumstances, no appeal would be warranted."  Id. The court does not believe reasonable jurists would find the court's ruling debatable or wrong.  Accordingly, a certificate of appealability shall not issue in light of the second prong of the Slack standard.

Although the court declines to issue a certificate of appealability, Mr. Vice may timely seek a certificate of appealability from the United States Court of Appeals for the Eighth Circuit under Fed. R. App. P. 22.  See Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts and Fed. R. App. P. 22.

Dated September 29, 2015.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE